# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | )<br>)<br>) |
| Plaintiff, | ) CIVIL ACTION NO. |
| | ) |
| v. | )<br>)<br>) |
| ABM AVIATION, INC., | ) JURY TRIAL DEMAND |
| | ) |
| Defendant. | )<br>) |

## COMPLAINT

This is an action under Title I of the Americans with Disabilities Act, as amended ("ADA") and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of a disability and to provide appropriate relief to Octavia Broughton ("Broughton"), who was adversely affected by such practices. The U.S. Equal Employment Opportunity Commission (the "Commission" or "EEOC") alleges that Defendant ABM Aviation, Inc. ("Defendant") discriminated against Broughton when it failed to provide Broughton with a reasonable accommodation for her disability and subsequently terminated her employment because of her disability, in violation of the ADA, as amended.

## JURISDICTION AND VENUE

1.	Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

2.	The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.	Plaintiff, the Equal Employment Opportunity Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant, a Georgia corporation, has continuously been doing business in the State of Georgia, and the City of Atlanta, and has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

6.      At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Broughton filed a charge of discrimination with the Commission alleging violations of the ADA by Defendant.

8.      On October 5, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9. On November 30, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

11. Since at least February 2016, Defendant has engaged in unlawful employment practices at its Hartsfield-Jackson Atlanta International Airport site, in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112 (a) and (b).

12. Broughton is a qualified individual with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). Broughton has physical impairments, acute myeloid leukemia (AML) and cardiomyopathy, that substantially limit her in the operation of major bodily functions, including normal cell growth and functions of cardiovascular system.

13. Broughton began working for Defendant as a cabin cleaning agent on May 11, 2015, and notified Defendant's Human Resources Manager ("HR Manager") and her supervisor at the time of her AML upon hire.

14. On September 5, 2015, Defendant promoted Broughton to team lead, and her main responsibilities included operating a high-lift truck and leading a team of cabin cleaning agents in servicing the aircrafts.

15. In or around December 2015, Broughton was diagnosed with cardiomyopathy. Upon learning of her diagnosis, Broughton notified the HR manager and all direct supervisors at the time of her cardiomyopathy condition and advised them that she needed to avoid overheating. Defendant had temporarily assigned Broughton to an indoor position in October 2015 as a result of a shoulder injury on the job. Broughton continued to work the indoor position until February 2016, when Defendant's doctors released her to work the team lead position.

16. In or around February 2016, Broughton notified her new supervisors of her cardiomyopathy condition and verbally requested an assignment to a vehicle equipped with air-conditioning as a reasonable accommodation.

17. In or around April 2016, during a conversation with the Director of Operations regarding recent absences she had incurred due to her medical conditions, Broughton again verbally requested an assignment to a vehicle equipped with air-conditioning as a reasonable accommodation. The Director of Operations recommended that Broughton apply for FMLA leave.

18. On or about April 20, 2016, Broughton submitted documentation to Defendant advising of her immediate need for FMLA leave due to her serious medical condition.

19. On or about April 20, 2016, Defendant suspended Broughton for around five days due to alleged violation of its attendance policy. Under its attendance policy, Defendant assigns points and imposes discipline for certain absences, including those resulting from disabilities.

20. On or about April 27, 2016, Broughton felt light-headed at work due to her cardiomyopathy, and Defendant had her transported to the hospital.

21. Upon her return to work, Broughton submitted medical documentation to her supervisor. Defendant again suspended her – this time for nearly five weeks -- for allegedly violating its attendance policy. Defendant failed to consider that some or many of Broughton's absences were due to disability. Upon information and belief, Defendant did not uniformly enforce its attendance policy and applied it more harshly to Broughton than to other, non-disabled employees.

22. On or around May 10, 2016, Broughton provided a completed FMLA application to Defendant with a certification from her doctor confirming her AML and cardiomyopathy diagnoses and advising Defendant that both conditions required follow-up medical appointments and that it was medically necessary for Broughton

to be absent from work intermittently because she was unable to perform any of her job duties during flare-ups of her conditions.

23. On May 20, 2016, Defendant approved Broughton's request for intermittent FMLA leave for a total of 480 hours beginning retroactively on April 22, 2016.

24. On June 27, 2016, Broughton felt ill at work due to her cardiomyopathy and was transported to a hospital for emergency services.

25. Broughton provided Defendant a July 7, 2016 return to work form completed by her medical provider requesting that she be allowed to return to work on July 11, 2016.

26. On July 11, 2016, Defendant's new HR manager deemed the medical release insufficient and requested that Broughton provide medical documentation from her private doctor before she could return to work.

27. Broughton explained that it would take one to two months to secure an appointment with her cardiologist, and the HR manager restated that Broughton would not be allowed to return to work without full clearance from her physician.

28. Broughton provided Defendant with a July 27, 2016, certificate to return to work from a medical provider at the Emory Clinic stating that Broughton had been seen and could return to work on July 28, 2016.

29. On July 28, 2016, Broughton provided Defendant a return to work form stating that Broughton had been seen by physician Susmita Parashar, MD in the Emory clinic that same day and was cleared to return to work and a separate written request for accommodation noting that she was under Dr. Parashar's care for weak heart muscles and was advised to modify her job duties to work indoors as tolerated.

30. On August 1, 2016, Broughton reported to work and met with the Director of Operations who advised her that Defendant could not accommodate her restrictions nor her FMLA request and sent Broughton home.

31. Broughton remained in constant communication with the HR Manager in an attempt to return to work.

32. On August 8, 2016, however, the HR manager told Broughton that she had to return to work with no medical restrictions or risk termination.

33. On August 9, 2016, the HR manager contacted Broughton and advised her that her employment had been terminated due to her not being able to return to work with no medical restrictions. The HR Manager further told Broughton that Defendant would not accommodate her medical restrictions and did not have to do so.

34. Defendant knew of Broughton's limitations but failed to provide the requested accommodations or any other accommodations despite its ability to do so.

Defendant had available vehicles with air conditioning that could have been assigned to Broughton to allow her to perform the essential functions of her job and complied with Dr. Parashar's medical restrictions.

35. At the time of her termination, Broughton was capable of performing the essential functions of her job with a reasonable accommodation.

36. The effect of the practices complained of above has been to deprive Broughton of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

37. The unlawful employment practices complained of above were intentional.

38. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Broughton.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from terminating any employee based on an actual or perceived disability, denying them reasonable accommodations under the ADA requested due to their disability

status, and engaging in any other employment practices that discriminate on the basis of disability.

B. Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C. Order Defendant to make Broughton whole, by providing appropriate back pay, with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement or front pay.

D. Order Defendant to make Broughton whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job search expenses and medical expenses, in amounts to be determined at trial.

E. Order Defendant to make Broughton whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F. Order Defendant to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

JAMES L. LEE
Acting General Counsel

GWENDOLYN YOUNG REEMS
Associate General Counsel

ANTONETTE SEWELL
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Supervisory Trial Attorney

*s/ Sairalina Montesino*
SAIRALINA MONTESINO
(GA Bar #940665)
Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Atlanta District Office

100 Alabama St. SW
Atlanta, Georgia 30303
Tel: 404-562-6842
Fax: 404-562-6905

ATTORNEYS FOR PLAINTIFF EEOC